IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ADAM FRANCHI, Individually and On Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) Case No. _____ ) |
| v. | ) JURY TRIAL DEMANDED ) |
| BLACK BOX CORPORATION, JOEL T. TRAMMELL, RICHARD L. CROUCH, CYNTHIA J. COMPARIN, RICHARD C. ELIAS, THOMAS G. GREIG, JOHN S. HELLER, AGC NETWORKS PTE LTD., BBX MAIN INC., BBX INC., and HOST MERGER SUB INC., | ) CLASS ACTION ) ) ) ) ) ) ) |
| Defendants. | ) |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1.  This action stems from a proposed transaction announced on November 11, 2018 (the "Proposed Transaction"), pursuant to which Black Box Corporation ("Black Box" or the "Company") will be acquired by affiliates of AGC Networks Ltd.

2.  On November 11, 2018, Black Box's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with AGC Networks Pte Ltd. ("Top Parent"), BBX Main Inc. ("Parent"), BBX Inc. ("BBX Intermediate"), and Host Merger Sub, Inc. ("Merger Sub") (collectively, "AGC"). Pursuant to the terms of the Merger Agreement, Merger Sub commenced a tender offer

(the "Tender Offer") to purchase all outstanding shares of Black Box common stock for $1.08 per share in cash.  The Tender Offer is set to expire on December 19, 2018.

3. On November 21, 2018, defendants filed a Solicitation/Recommendation Statement (the "Solicitation Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4. The Solicitation Statement omits material information with respect to the Proposed Transaction, which renders the Solicitation Statement false and misleading.  Accordingly, plaintiff alleges herein that defendants violated Sections 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Solicitation Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(e), 14(d), and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Black Box common stock.

9. Defendant Black Box is a Delaware corporation and maintains its principal executive offices at 100 Park Drive, Lawrence, Pennsylvania 15055. Black Box's common stock is traded on the NasdaqGS under the ticker symbol "BBOX." Black Box is a party to the Merger Agreement.

10. Defendant Joel T. Trammell is President, Chief Executive Officer ("CEO"), and a director of the Company.

11. Defendant Richard L. Crouch is a director of the Company.

12. Defendant Cynthia J. Comparin is a director of the Company.

13. Defendant Richard C. Elias is a director of the Company.

14. Defendant Thomas G. Greig is a director of the Company.

15. Defendant John S. Heller is a director of the Company.

16. The defendants identified in paragraphs 10 through 15 are collectively referred to herein as the "Individual Defendants."

17. Defendant Top Parent is a company organized under the laws of Singapore and a party to the Merger Agreement.

18. Defendant Parent is a Delaware corporation and a party to the Merger Agreement.

19. Defendant BBX Intermediate is a Delaware corporation and a party to the Merger Agreement.

20. Defendant Merger Sub is a Delaware corporation and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

21. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Black Box (the "Class"). Excluded from the Class are defendants herein and any

3

person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

22. This action is properly maintainable as a class action.

23. The Class is so numerous that joinder of all members is impracticable. As of November 5, 2018, there were approximately 15,237,521 shares of Black Box common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

24. Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

25. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

26. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

27. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## **SUBSTANTIVE ALLEGATIONS**

*Background of the Company and the Proposed Transaction*

28. Black Box is a leading digital solutions provider dedicated to helping customers design, build, manage, and secure their IT infrastructure.

29. Black Box delivers high-value products and services through its global presence and approximately 3,000 team members.

30. On November 11, 2018, Black Box's Board caused the Company to enter into the Merger Agreement with AGC.

31. Pursuant to the terms of the Merger Agreement, Merger Sub commenced the Tender to purchase all outstanding shares of Black Box common stock for $1.08 per share in cash.

32. According to the press release announcing the Proposed Transaction:

A wholly-owned subsidiary of global solutions integrator AGC Networks Ltd (BSE/NSE: AGCNET), AGC Networks Pte. Ltd. in Singapore and Black Box Corporation (NASDAQ:BBOX) announced today that they have entered into a definitive merger agreement under which AGC Singapore would acquire all the outstanding shares of Black Box for $1.08 per share in cash, subject to customary closing conditions and regulatory approvals. The Black Box Board of Directors unanimously approved the merger agreement following a thorough review of the full range of available strategic, financial and capital structure alternatives, which Black Box commenced and announced on February 6, 2018. The transaction is expected to close prior to the end of the calendar year.

The combination with Black Box will provide a substantial increase in AGC's presence and offerings in North America. In addition, AGC will enhance its footprint in providing technologies and services throughout six continents. The acquisition will be significant for AGC, expected to add over $600 million in annual revenue and approximately 3,000 team members serving clients worldwide. . . .

Under the terms of the merger agreement, an indirect wholly owned U.S. subsidiary of AGC Singapore will commence a tender offer to purchase all of the outstanding shares of Black Box common stock for $1.08 per share in cash. Upon the successful completion of the tender offer, the U.S. subsidiary of AGC Singapore would acquire all remaining shares of common stock not tendered in the offer for $1.08 per share through a second-step merger. The tender offer and the second-step merger are subject to customary conditions, including the tender of a majority of

5

the outstanding shares of Black Box common stock. The U.S. subsidiary of AGC Singapore is financing the merger through a combination of equity and debt. Pathlight Capital will serve as administrative agent for the senior credit facilities.

33. The Merger Agreement contains a "no solicitation" provision that prohibits the Individual Defendants from soliciting alternative proposals and severely constrains their ability to communicate and negotiate with potential buyers who wish to submit or have submitted unsolicited alternative proposals. Section 5.2(a) of the Merger Agreement provides:

> (a) Except as permitted by this Section 5.2, the Company shall not, and shall cause its Subsidiaries and each of the officers, directors and employees of the Company and its Subsidiaries, and shall direct each of the consultants, agents, financial advisors, investment bankers, attorneys, accountants and other representatives (collectively, "Representatives") of the Company and its Subsidiaries not to, from and after the time of the Escrow Funding until the Effective Time or, if earlier, the termination of this Agreement in accordance with Article VIII, (A) directly or indirectly, solicit, initiate or knowingly facilitate or encourage (including by way of furnishing non-public information) the making of any inquiry, proposal or offer that constitutes, or would reasonably be expected to lead to, an Alternative Transaction Proposal (other than in respect of an Exempted Alternative Transaction), (B) engage in or otherwise participate in any discussions or negotiations regarding, or furnish to any other Person any non-public information in connection with or for the purpose of encouraging or facilitating, an Alternative Transaction Proposal (other than in respect of an Exempted Alternative Transaction), or (C) approve any transaction under, or any third party becoming an "interested stockholder" under, Section 203 of the DGCL. As promptly as practicable following the time of the Escrow Funding, the Company shall, and shall cause the Company's controlled Affiliates to, and shall direct its and their respective Representatives to, immediately cease any and all existing solicitation, discussions or negotiations with any Persons (or provision of any nonpublic information to any Persons) with respect to any inquiry, proposal or offer that constitutes, or could reasonably be expected to lead to, an Alternative Transaction Proposal (other than with respect to any Company Takeover Proposal or an Exempted Alternative Transaction, which shall not be subject to this sentence). As promptly as practicable after the time of the Escrow Funding (and in any event within two (2) Business Days following the date thereof), the Company shall (i) request in writing that each person that has theretofore executed a confidentiality agreement in connection with its consideration of a potential an Alternative Transaction Proposal promptly destroy or return to the Company all nonpublic information heretofore furnished by the Company or any of its Representatives to such Person or any of its Representatives to the extent such destruction, return or equivalent provisions are contained in such confidentiality agreements, and subject to the terms of such confidentiality agreements and (ii) terminate access to any

6

physical or electronic data rooms maintained by the Company or its Representatives relating to a possible Alternative Transaction Proposal by any such Person; provided, however, that this sentence shall not apply to any third party that has proposed, and at the time of the Escrow Funding continues to propose, a Company Takeover Proposal or an Exempted Alternative Transaction. For the avoidance of doubt, any violation of the restrictions set forth in this Section 5.2 by any of the Company's controlled Affiliates or any of their respective Representatives shall be deemed a breach of this Section 5.2 by the Company.

34. Additionally, the Company must promptly advise AGC of any proposals or inquiries received from other parties. Section 5.2(c) of the Merger Agreement provides:

(c) From and after the time of the Escrow Funding, the Company shall provide a copy of any written Company Takeover Proposal that is reasonably likely to result in a Superior Alternative Proposal received by the Company after the time of the Escrow Funding to Parent and a summary of the material terms of any such oral Company Takeover Proposal made after the time of the Escrow Funding, and keep Parent reasonably informed of any material developments, discussion or negotiations regarding any such Company Takeover Proposal, in each case on a reasonably prompt basis (and in any event within 48 hours). The Company agrees that the Company and its Subsidiaries will not enter into any confidentiality agreement with any Person subsequent to the date hereof which prohibits the Company from providing any information to Parent in accordance with this Section 5.2.

35. Moreover, the Merger Agreement contains a "fiduciary out" provision permitting the Board to change its recommendation of the Proposed Transaction under extremely limited circumstances, and grants AGC a "matching right" with respect to any "Superior Alternative Proposal" made to the Company. Sections 5.2(d) and (e) of the Merger Agreement provide:

(d) Except as expressly permitted by Section 5.2(e) and/or Section 5.2(f), the Company Board shall not (i) (A) fail to include the Company Recommendation in the Schedule 14D-9, (B) change, qualify, withhold, withdraw or modify, or publicly propose to change, qualify, withhold, withdraw or modify, in a manner adverse to Parent, the Company Recommendation, (C) make any recommendation or public statement in connection with a tender offer or exchange offer other than a recommendation against such offer or a customary "stop, look and listen" communication (it being understood that the Company Board may refrain from taking a position with respect to a Company Takeover Proposal until the close of business as of the tenth Business Day after the commencement of a tender offer in connection with such Company Takeover Proposal pursuant to Rule 14d-9(f) under the Exchange Act without such action being considered such an adverse

7

modification), or (D) adopt, approve or recommend, or publicly propose to approve or recommend to stockholders of the Company a Company Takeover Proposal (the actions described in this clause (i) being referred to as a "Change of Recommendation"), (ii) authorize, cause or permit the Company or any of its Subsidiaries to enter into any (x) Company Acquisition Agreement or (y) any Alternative Transaction Agreement prior to the Original Expiration Time or from and after the time of the Escrow Funding, or (iii) take any action pursuant to Section 8.1(f); provided, in each case, however, that the Company Board (and, as applicable, the Company) may take or omit to take any such actions in respect of any Exempted Alternative Transaction, subject to compliance with Section 5.2(e).

(e) Notwithstanding anything to the contrary set forth in this Agreement, prior to the Acceptance Time, the Company Board may, in response to an Exempted Alternative Transaction, an Alternative Transaction Proposal (if prior to the time of the Escrow Funding, in the case of an Alternative Transaction Proposal that is not an Exempted Alternative Transaction), or a Company Takeover Proposal (if subsequent to the time of the Escrow Funding), (i) make a Change of Recommendation and/or (ii) authorize, cause or permit the Company or any of its Subsidiaries to (x) from and after the Original Expiration Time, enter into an Alternative Transaction Agreement (but only if the Minimum Condition would not be met at the time of entering into such Alternative Transaction Agreement), (y) at any time prior to the Acceptance Time, enter into a Company Acquisition Agreement, in each case in connection with taking any action pursuant to Section 8.1(f), or (z) at any time prior to the Acceptance Time, enter into an Exempted Alternative Transaction, if, in the case of clauses (x) and (y), the Company Board or any duly constituted and authorized committee thereof has determined in good faith, after consultation with its financial advisor and legal counsel, that (A) the failure to do so would be inconsistent with the Company Board's fiduciary duties under applicable Law, and (B) such Alternative Transaction Proposal constitutes a Superior Alternative Proposal; provided, however, that (1) the Company has given Parent at least three Business Days' prior written notice of its intention to take such action, (2) if Parent requests, the Company has negotiated, and has caused its Representatives to negotiate, in good faith with Parent during such notice period to enable Parent to propose in writing an offer binding on Parent upon acceptance by the Company to effect revisions to the terms of this Agreement such that it would cause such Superior Alternative Proposal to no longer constitute a Superior Alternative Proposal, (3) following the end of such notice period, the Company Board or any duly constituted and authorized committee thereof shall have considered in good faith such binding offer, and shall have determined that the Superior Alternative Proposal continues to constitute a Superior Alternative Proposal if the revisions proposed in such binding offer were to be given effect, and (4) in the case of a Company Superior Proposal (but not in the case of any other Superior Alternative Proposal), in the event of any material change to the material terms of such Company Superior Proposal, the Company shall, in each case, have delivered to Parent an additional notice consistent with that described in clause (1) above and the notice period shall

have recommenced, except that the notice period shall be at least two Business Days (rather than the three Business Days contemplated by clause (1) above); provided, further, however, that in the case of an Exempted Alternative Transaction, only the foregoing clauses (1) – (3) above shall apply, except that the notice period shall be at least one Business Day (rather than the three Business Days contemplated in clause (1) above).

36. The Merger Agreement also provides for a "termination fee" of $1.5 million payable by the Company to AGC if the Individual Defendants cause the Company to terminate the Merger Agreement.

### *The Solicitation Statement Omits Material Information, Rendering It False and Misleading*

37. Defendants filed the Solicitation Statement with the SEC in connection with the Proposed Transaction.

38. As set forth below, the Solicitation Statement omits material information with respect to the Proposed Transaction, which renders the Solicitation Statement false and misleading.

39. The Solicitation Statement omits material information regarding the Company's financial projections and the analyses performed by the Company's financial advisor in connection with the Proposed Transaction, Raymond James & Associates, Inc. ("Raymond James").

40. With respect to the Company's financial projections, the Solicitation Statement fails to disclose: (i) all line items used to calculate EBITDA and Adjusted EBITDA; (ii) all line items used to calculate unlevered free cash flow; and (iii) a reconciliation of all non-GAAP to GAAP metrics.

41. With respect to Raymond James's Selected Companies Analysis, the Solicitation Statement fails to disclose the individual multiples and financial metrics for the companies observed by Raymond James in the analysis.

42. With respect to Raymond James's Selected Transactions Analysis, the Solicitation Statement fails to disclose the individual multiples and financial metrics for the transactions

9

observed by Raymond James in the analysis.

43. With respect to Raymond James's Discounted Cash Flow Analysis, the Solicitation Statement fails to disclose: (i) the individual inputs and assumptions underlying the discount rates ranging from 16.8% to 18.8% and the perpetual growth rates ranging from 1.5% to 2.5%; (ii) the range of terminal values for the Company; and (iii) the Company's then-current capitalization and number of fully-diluted Company shares outstanding.

44. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

45. The Solicitation Statement also omits material information regarding potential conflicts of interest of Raymond James.

46. The Solicitation Statement fails to disclose the amount of compensation Raymond James received for the past services it provided to the Company, "including financial advisory services related to the divestiture of its Federal Business as well as the Second Amendment to its Credit Agreement, dated June 29, 2018."

47. The Solicitation Statement also fails to disclose the amount of the "customary fee" that Raymond James will receive "in connection with advisory services rendered in connection with the Contemplated Transactions," as well as the percentage that "is contingent upon the consummation of the Contemplated Transactions."

48. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

49. The omission of the above-referenced material information renders the Solicitation Statement false and misleading, including, *inter alia*, the following section of the Solicitation Statement: The Solicitation or Recommendation.

50. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

### (Claim for Violation of Section 14(e) of the 1934 Act Against Defendants)

51. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

52. Section 14(e) of the 1934 Act states, in relevant part, that:

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders[.]

53. Defendants disseminated the misleading Solicitation Statement, which contained statements that, in violation of Section 14(e) of the 1934 Act, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not misleading.

54. The Solicitation Statement was prepared, reviewed, and/or disseminated by defendants.

55. The Solicitation Statement misrepresented and/or omitted material facts in connection with the Proposed Transaction as set forth above.

56. By virtue of their positions within the Company and/or roles in the process and the preparation of the Solicitation Statement, defendants were aware of this information and their duty to disclose this information in the Solicitation Statement.

57. The omissions in the Solicitation Statement are material in that a reasonable shareholder will consider them important in deciding whether to tender their shares in connection with the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available.

58. Defendants knowingly or with deliberate recklessness omitted the material information identified above in the Solicitation Statement, causing statements therein to be materially incomplete and misleading.

59. By reason of the foregoing, defendants violated Section 14(e) of the 1934 Act.

60. Because of the false and misleading statements in the Solicitation Statement, plaintiff and the Class are threatened with irreparable harm.

61. Plaintiff and the Class have no adequate remedy at law.

## COUNT II

**(Claim for Violation of 14(d) of the 1934 Act Against Defendants)**

62. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

63. Section 14(d)(4) of the 1934 Act states:

Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

64. Rule 14d-9(d) states, in relevant part:

Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and

the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

Item 8 requires that directors must "furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading."

65. The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits the material facts set forth above, which renders the Solicitation Statement false and/or misleading.

66. Defendants knowingly or with deliberate recklessness omitted the material information set forth above, causing statements therein to be materially incomplete and misleading.

67. The omissions in the Solicitation Statement are material to plaintiff and the Class, and they will be deprived of their entitlement to make a fully informed decision with respect to the Proposed Transaction if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

68. Plaintiff and the Class have no adequate remedy at law.

## COUNT III

### (Claim for Violation of Section 20(a) of the 1934 Act Against the Individual Defendants and AGC)

69. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

70. The Individual Defendants and AGC acted as controlling persons of Black Box within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as directors of Black Box and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Solicitation Statement filed

13

with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

71. Each of the Individual Defendants and AGC was provided with or had unlimited access to copies of the Solicitation Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

72. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Solicitation Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly connected with and involved in the making of the Solicitation Statement.

73. AGC also had direct supervisory control over the composition of the Solicitation Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Solicitation Statement.

74. By virtue of the foregoing, the Individual Defendants and AGC violated Section 20(a) of the 1934 Act.

75. As set forth above, the Individual Defendants and AGC had the ability to exercise control over and did control a person or persons who have each violated Section 14(e) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.

76. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

77. Plaintiff and the Class have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment and relief as follows:

A. Enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to file a Solicitation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(e), 14(d), and 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: November 29, 2018   **RIGRODSKY & LONG, P.A.**

By: */s/ Gina M. Serra*
    Brian D. Long (#4347)
**OF COUNSEL:**   Gina M. Serra (#5387)
    300 Delaware Avenue, Suite 1220
**RM LAW, P.C.**   Wilmington, DE 19801
Richard A. Maniskas   Telephone: (302) 295-5310
1055 Westlakes Drive, Suite 300   Facsimile: (302) 654-7530
Berwyn, PA 19312   Email: bdl@rl-legal.com
Telephone: (484) 324-6800   Email: gms@rl-legal.com
Facsimile: (484) 631-1305
Email: rm@maniskas.com   *Attorneys for Plaintiff*

16